JAMES W. SPRIGGS and HAZEL SPRIGGS, dba
JIM'S MARKET,

*Plaintiffs and Respondents,*

vs.

KAY GOODRICH and MRS. KAY GOODRICH,

*Defendants,*

UNITED STATES OF AMERICA,

*Intervener and Appellant.*

(No. 2678; July 19th, 1955; 285 Pac. (2d) 1103)

For the intervener and appellant the cause was submitted upon the brief of John F. Raper, Jr., United States District Attorney and C. N. Bloomfield, Jr., Assistant United States District Attorney, both of Cheyenne, Wyoming; oral argument by Mr. Bloomfield.

For the plaintiffs and respondents the cause was submitted upon the brief of John J. Spriggs, Sr., and John J. Spriggs, Jr., both of Lander, Wyoming; oral argument by Mr. Spriggs, Sr.

## OPINION

HARNSBERGER, Justice.

This is an appeal from an order denying intervener's

motion to vacate an order which dismissed its petition in intervention.

Plaintiffs had obtained a money judgment against the defendants in an action at the commencement of which a writ of attachment issued and the holder of the proceeds of a sale of defendants' sheep was garnisheed. The garnishee reported the money was held by him for the account of defendants and an agency of the United States, the garnishee having been notified the sheep had been mortgaged to that governmental agency. The United States was permitted to intervene for the purpose of asserting its right to the money by virtue of the mortgage but when the matter was heard its claim was dismissed. Plaintiffs then had execution upon its judgment and a second garnishment was had upon the same garnishee and for the same monies. This time, however, the garnishee reported that prior to the service of the second garnishment he had been notified the defendants had assigned their entire interest in the funds to the same agency of the United States which had previously claimed as a mortgagee. Again the United States intervened, setting up the assignment, and claiming its prior right to the money.

Plaintiffs denied the claim, set up other defenses, and issue was joined between plaintiffs and the appealing intervener. On April 30, 1954, the court entered its order, setting the matter for trial on June 2, 1954. When the intervener failed to appear at the time fixed by that order, plaintiffs moved the court for its order dismissing the intervener's petition. The motion was granted, and the court's order therefor was entered. Within eight days thereafter and during the same term, the intervener having learned that its petition had been dismissed, filed its motion to vacate the order of dismissal, but after a hearing, the court denied the same. The appellant insists that because of certain circum-

stances hereafter appearing, the court grossly exceeded its discretionary power by denying the motion to vacate the order of dismissal, and therefore the denial of its motion to set the same aside was contrary to law.

Appellant has represented that when the issues upon its petition in intervention were joined, its counsel were instructed by the court to prepare and submit a form of order, setting the matter for trial, leaving blank the hour and date of the setting, as these were to be fixed and inserted by the court. In consequence, the intervener did prepare such an order and transmitted the same to the judge of the district court, together with a "covering" letter. Thereafter the intervener received back the covering letter from the clerk of court, bearing a stamp indicating the letter had been received and filed, but the intervener did not and never has received from the clerk or otherwise any order or copy of an order showing or indicating the matter had been set for trial. Notwithstanding this, it appears the court did, in fact, complete and enter the order, setting the trial for June 2, 1954, as above stated. The clerk transmitted a copy of the order to the *plaintiffs,* but there is no showing that a similar copy of the order was ever sent to the appellant or its counsel. Thereafter, at the time and place so fixed for trial, plaintiffs appeared, but this appellant, not knowing the court had completed and entered the order, did not appear. Plaintiffs moved the court for a dismissal, the court granted the motion, and entered its order dismissing appellant's petition in intervention. Appellant promptly moved to vacate the order of dismissal, but by order the court denied the motion. It is from this order the appeal is taken.

Plaintiffs have filed their motion to dismiss the appeal because (1) appellant failed to join other parties whom plaintiffs claim are necessary, proper and indis-

pensable, (2) the record does not contain a transcript of evidence, (3) there was no final judgment from which appeal could be taken, (4) matters at issue upon the petition for intervention were res judicata, having been disposed of by dismissal of the first petition in intervention, (5) the petition in intervention did not state facts sufficient to constitute grounds for intervention, and (6) the monies garnisheed were in custodia legis.

In 3 Am. Jur. 305, § 726, it is said in part: "The grounds for dismissal consists of facts which go to show that for some reason the merits of the appeal should not be heard." The text then groups into four general classes these grounds for dismissal of an appeal— (1) want of jurisdiction; (2) non-appealability of the judgment or order; (3) ineffectiveness of any judgment that might be rendered by the appellate court; and (4) defects in procedure. Only plaintiffs' second and third grounds may, by any reasoning, be considered as falling within either of the above groupings, (see also Bank of Commerce v. Williams, 52 Wyo. 1, 14, 69 Pac. (2d) 525, 529).

While neither want of alleged necessary parties or insufficiency of petition (also see 4 C.J.S. 1959, § 1356) nor want of merit in the appeal (and see 4 C.J.S. 1944, § 1353) are proper grounds for dismissing an appeal, we might point out that the alleged want of parties was not raised by demurrer nor answer in the trial court and would not therefore, in any event, be available to the plaintiff-respondent as grounds for dismissal. (See Kirch v. Nicholson, 42 Wyo. 489, 494, 297 P. 398, 400). The complaint that the record does not contain a transcript of the evidence is wholly without merit, as there was neither testimony, evidence, nor a trial from which a transcript could be made. The finality of the order dismissing the petition in intervention has

already been settled by this court. See Mitter v. Black Diamond Coal Co., 28 Wyo. 439, 444, 445, 206 Pac. 152, 153; also note Lake v. Lake, 63 Wyo. 375, 182 Pac. (2d) 824, and Eager v. Derowitsch, 68 Wyo. 251, 232 Pac. (2d) 713, in which latter cases similar appeals were considered. The plea of res judicata is patently without merit, as the United States claimed as a mortgagee under its first petition and as an assignee under its second. With respect to the contention that as the attached money was in custodia legis, it may be said that even though there was an attachment and garnishment which created a lien upon money belonging to the defendant in the hands of the garnishee, the lien in itself does not affect the general title of the debtor nor prevent the assignment of his title (see J. H. Mulrein Plumbing Supply Co. v. Walsh, 26 Ariz. 152, 222 Pac. 1046, 1049; 5 Am. Jur. 92, 93, § 824), although that title may be subject to existing encumbrance, (see Platte County State Bank v. Frantz, 33 Wyo. 326, 338, 239 Pac. 531, 535; 38 C.J.S. § 182, 504). It should go without saying that whether or not the lien obtained through processes of attachment and garnishment and by virtue of which it is claimed the monies involved are in custodia legis, makes plaintiffs' claim to the money superior to that of the United States, is not before us at this time. In fact, it is in order to have that point adjudicated in the lower court that this appeal is being prosecuted.

The plaintiffs' motion to dismiss the appeal will be denied.

The remaining question is, did the court below wrongly exercise its discretion in refusing to vacate its order dismissing intervener's petition? In April 1925, this court decided that the mere fact that a party or his counsel was not notified of the time set for trial, is not of itself sufficient reason to vacate a judgment ren-

dered upon default, saying in Boulter v. Cook, 32 Wyo. 461, 469, 234 P. 1101, 1103, 1104—

"The irregularity claimed in the case at bar is, in its ultimate analysis, that the court did not notify Cook or his counsel of taking up and disposing of the case, thus depriving Cook of the opportunity of answering over when the demurrer was overruled. But the courts seem to be unanimous in holding that no such notice was necessary to be given to the parties interested. It is the duty of a party, or his attorney, to take account of the time and place of holding court, the position of the case on the calendar, and the state of the calendar. He is presumed to know, and is held to know, what is necessary to protect his interest."

Appellant insists the case is now without precedential value, because since that decision was rendered, Section 3-211, Wyoming Compiled Statutes, 1945, (Ch. 80 Session Laws of Wyo. 1929), was enacted, the relevant portion of which reads as follows:

"The clerks of the district courts within the state of Wyoming, are hereby required to send by registered mail to all parties, or their attorneys of record, in all contested cases in said courts, a copy of all orders or judgments, immediately upon the signing thereof by the judge before whom said matter is pending, * * *" So it is claimed that the failure of the clerk to send a copy of the order setting the cause for trial in accordance with the statutory requirement, should save appellant from the hardship of being denied opportunity to have its claim disposed of upon the merits and that the rigor of the duty imposed by the Boulter case, supra, should accordingly be somewhat relaxed.

As far as we have learned, the first action taken by our legislature toward requiring notice of the signing or entry of orders, judgments or decrees, or that copies thereof be served or sent to parties to a judicial proceeding in this state, or to their attorneys of record, was the enactment of Chapter 122, Session Laws of

Wyoming, 1925, which became effective February 25, 1925, after the rendition of the judgment below in the Boulter case, supra, but before the appeal in that case was disposed of here. This statute required district judges to serve on parties or their attorneys a copy of all orders and judgments. The next action of the legislature was enactment of Chapter 65, Session Laws of Wyoming, 1927, which became effective February 25, 1927, and required clerks of district courts to notify in person, or by registered mail, the attorneys of record in the case, of the entry of all judgments, decrees or orders rendered by a judge when absent from the county wherein the cause was pending. This act expressly provided that it did not repeal, alter, or amend Chapter 122, Session Laws of Wyoming, 1925. The last legislative act appears as Section 3-211, Wyoming Compiled Statutes, 1945, set forth above. It was enacted as Chapter 80, Session Laws of Wyoming, 1929, and it repealed Chapter 122, Session Laws of Wyoming, 1925. The default judgment upon which the cited Boulter case hinged, was rendered in an action instituted December 16, 1915. That default judgment was rendered July 23, 1919, filed August 11, 1919, vacated June 2, 1920, and thereupon a judgment was entered, the effect of which was attempted to be avoided in the quiet title action, Boulter v. Cook, supra, wherein this court rendered the decision which counsel now says is no longer of precedential value.

We must, therefore, concede that Section 3-211, W.C.S., 1945, presents a new element to be considered in passing upon the lower court's refusal to vacate its default judgment in this case. But we are not prepared to go so far as to say Section 3-211 was intended to nullify the holding in the Boulter case, supra, which accorded itself with decisions of other jurisdictions in so many courts. In order to dispose of this case it is only necessary to point out that there are differences

which distinguish it from the Boulter case. Although the circumstances in the Boulter case were not as conducive as those in this, to point up the harshness of losing to a litigant the adjudication of claimed rights through a denial occasioned by failure to keep daily apace of the "position of the case on the calendar", the facts in the Boulter case made it clear that there was little, if any, reason to incline the court to withhold the application of the strict rule. In the Boulter case the default judgment was rendered some three and one-half years after filing of a demurrer, the last action taken by the aggrieved party, and after fourteen months had passed following a decision by this court in another case which had been awaited before the demurrer was acted upon. The instant matter became at issue with the filing of appellant's reply on April 30, 1954, it having been transmitted to the clerk of court by mail on April 28, 1954. On the day of mailing, appellant also transmitted to the judge of the district court before whom the cause was pending, a proposed form of order setting the matter for trial, with spaces left for the insertion by the judge of the hour and date of trial. The appellant's letter of transmittal was returned marked as filed April 30, 1954, but there was no indication nor notation advising that the court had acted by inserting in the submitted order the hour and date of trial, although it now appears the court did complete the order. The order was entered, and the clerk notified the opposing counsel but not the appellant.

Are we now to say that appellant was negligent of its duty "to take account of the time and place of holding court, the position of the case on the calendar and the state of the calendar"? Is appellant to be "held to know" that which its counsel had been diligent to ascertain in order to "protect his interest" but which he did not learn due to no fault of his own? Although counsel's affidavit in support of appellant's motion to vacate the

default judgment, does not so state, it was represented to this court in argument and unchallenged by opposing counsel, that the district judge had instructed appellant's counsel to prepare and submit the order setting the case for trial, leaving the spaces blank for insertion of the hour and date for fixing by the judge. Appellant's counsel promptly did as he was told. What more should have been expected. It cannot be said that appellant waited an undue or an unreasonable time for a more definite response to his lettter transmitting the order he had prepared, than the return of the letter with the mark indicating it had been received Only thirty-two days passed between the sending to the court the form of order and the entry of the default against the appellant, and the dismissal of its petition in intervention. The appellant acted with commendable promptness and within eight days and, within the same term, moved to vacate the judgment of default and dismissal. The extreme differences in point of time between the steps taken in these two cases may not justify our departing from the law announced in the Boulter case, supra, but they do serve to warn that the rule of the Boulter case should not be incautiously applied, and that where there are circumstances present which indicate that there was an understandable mistake or inadvertence, or that a reasonable effort had been made to ascertain the date on which the cause was set for trial, the preference of courts to have causes disposed of upon their merits rather than otherwise, should predominate and control.

In 49 C.J.S. § 334 (e), 620, a somewhat pertinent statement is made, a portion of which we quote:

" * * * a judgment by default will be opened if it is due to the inaccuracy of information given by, or reliance on statements of, such officials, such as a judge or the clerk of the court."

In support there is cited Yerkes v. Dangle, 42 Del. 362, 33 A. 2d 406, 408, where a litigant, attempting to have a default judgment set aside, relied upon a court official stating to him that there was no action pending against him notwithstanding the opposing counsel had advised him by letter to the contrary. The court granted, what amounted to an application, to set aside the default judgment, saying in part:

"The authorities recognize that litigants are entitled to rely on statements by officials charged with the custody and control of papers and records relating to judicial proceedings in which they are interested, and about which information is sought, and that a judgment by default will be opened if it is due to the inaccuracy of information given by such officials. Logan v. Southall, 137 Iowa 372, 115 N.W. 19; Anaconda Mining Co. v. Saile, 16 Mont. 8, 39 P. 909, 50 Am. St. Rep. 472; 1 Freeman on Judgments, Sec. 245; 34 C.J. 299."

In the case at bar, information as to the hour and date of setting for trial was sought by submitting to the court the requested form of order and though here there is no question regarding "inaccuracy of information", the failure of the clerk to supply appellant with a copy of the order after it was completed by the judge, under the circumstances in this case, left appellant in exactly the same position as if he had been misinformed. In other words, appellant might reasonably have expected that when the judge acted he would be informed. Counsel had followed the court's direction. He had acted and relied upon statements made to him by the court, looking toward the setting of the cause for trial. That he waited slightly more than thirty days after sending the form of order, expecting to be advised of the court's action in the matter, without taking further action or making further inquiry, was not unreasonable nor does it stamp him with being negligent.

The Delaware court (Yerkes v. Dangle, 42 Del. 362, 33 A. 2d 406, 408, 409), continued:

"The defendant contends, however, that there was a lack of reasonable diligence on the part of the defendant, because he relied upon the 'misinformation he claims to have received from the Prothonotary's office', instead of the letter of September 2, 1942 (from opposing counsel). The letter was amply sufficient to put a careful and prudent man upon inquiry, but when the other circumstances of the case are considered, I do not think that it can properly be said that the default occurred by reason of absence of, or such a lack of, care by the defendant as to amount to gross carelessness. The application for relief was made promptly, and the facts as averred by the defendant, if true, constitute a just and legal defense to the plaintiff's claim. The ultimate aim of litigation is the speedy determination of causes according to their real merits. In this case I think that substantial justice between the parties can best be accomplished, and without delay to the plaintiff, by granting the defendant's application." (parenthesis supplied).

It has also been said that where there has been a default judgment resulting from a misunderstanding between counsel and the court, it may be set aside (49 C.J.S. § 334 (g), 638), and appellate courts have reversed lower courts under these circumstances when they have failed to set the default judgment aside. Thus in Central Metropolitan Bank v. American State Bank of Burlington, 49 N. Dak. 165, 190 N.W. 813, 814, 815, there was an appeal from an order of the lower court refusing to vacate a default judgment for the plaintiffs. The reversing opinion sets forth the material facts, a brief summary of which is, that the judge and complaining counsel had conversations in which the court indicated the case would not be set for trial over the objection of either party, and that the appellant had objected. Notwithstanding this, at the request of opposing counsel, a default judgment was entered against defendant, who then filed a motion to vacate, which was denied. The appellate court said in part:

"It appears plainly from the record, now before the

court, that defendants did not intend to neglect to defend both causes of action when they were properly brought on for trial. * * * It would seem from the record that there was a misunderstanding between the court and the attorneys of the parties to the action just when in fact the cases would be set for trial and tried. There is no real showing that defendants have not been diligent in their defense. Their answers were interposed, and there is no definite showing that they were endeavoring to procrastinate. In these circumstances, we believe the due administration of justice requires that the defendants have an opportunity in court to establish their defenses. We believe, further, that the court abused its discretion in denying defendants' motion to vacate the judgments."

Here also, it is plain that the intervener "did not intend to neglect" to appear for the trial of the cause. On the contrary, it was the appellant-intervener, not the plaintiff, who sought a setting for trial and was alert and prompt to follow the judge's direction to secure such a setting.

The plaintiff below did not deny allegations in the defendant's affidavit nor, as before stated, did counsel challenge the accuracy of the representations made by appellant's counsel before this court. In consequence, these statements and representations for the purpose of this opinion must be accepted as true. Yerkes v. Dangle, 42 Del. 362, 33 A. 2d 406, 407. We can only reconcile the court's refusal to vacate its default judgment in this case by assuming as we do that the learned judge believed the decision of this court in the Boulter case, supra, required that action, and failed to recognize, as we have, that the instant case is distinguished from the Boulter case, in that here the appellant is relying not alone on failure to receive notice of the time and date of trial, but that appellant had reasonable cause, even independent of Section 3-211, W.C.S., 1945, to expect that counsel would be advised of the trial setting.

Even among the authorities quoted by this court in reaching its decision in the Boulter case, some recognition was given to the position we are taking. In Union Brewing Co. v. Cooper, 15 Colo. App. 65, 60 P. 946, 947, the court was quoted as saying:

"There were no facts set forth in the affidavits, or in any of them, showing any mistake or excusable inadvertence."

and again a quote was included from Baker v. Hunt & Co., 66 Okla. 42, 166 Pac. 891, where it was said:

"Neither the petition nor the evidence introduced discloses any effort on the part of the plaintiffs in error to ascertain the date on which the cause had been set for trial."

Neither of these statements may be made in the case before us.

We feel also that there are some points worth noting in this appeal, which were discussed in Lake v. Lake, 63 Wyo. 375, 182 Pac. 2d 824. There the lower court was reversed because of its refusal to vacate its default judgment against a defendant who had failed to plead within the time limited by statute. The opinion observed that courts favor a trial upon the merits; that courts in the exercise of sound discretion have inherent power to set aside their default judgments; that the discretion to be exercised is an impartial one, guided and controlled by fixed legal principles in conformity with the spirit of the law and to subserve and not defeat justice. In quoting with approval from the Citizens' National Bank v. Brandon, 19 N.D. 489, 126 N.W. 102, 27 L.R.A. N.S. 858, this court indicated its agreement, that even though the lower court had not exercised its discretion intemperately, arbitrarily, or in a manner palpably erroneous, the reviewing court should extend its inquiry to determine from the facts shown, whether in the interest of justice and right it should

disturb an order which has the effect of preventing a determination upon the merits.

In Eager v. Derowitsch, 68 Wyo. 251, 267, 232 Pac. (2d) 713, 718, 719, where the lower court refused to vacate its default judgment rendered on failure of the defendant to answer or otherwise plead within the time required by law, this court reversed upon a showing that due to a misunderstanding between the defendant and his counsel the default occurred. This opinion so exhaustively reviews the authorities supporting the views there expressed, many of which are deemed applicable here, that it would serve no good purpose to attempt further amplification here.

We repeat that we adhere to the basic rule recognized in the Boulter case, supra, that "it is the duty of a party, or his attorney, to take account of the time and place of holding court, the position of the case on the calendar, and the state of the calendar", but, as in the circumstances of this case, we also hold that in the interest of justice, there must be an exception to that general rule where it appears that due to an understandable mistake, excusable inadvertence or honest misunderstanding reasonably relied upon, the party charged with the duty, is misled.

The order appealed from must be reversed and direction is given to open the default, to set aside the judgment entered and that the issues upon the appellant's petition in intervention, the plaintiff's answer and the intervener's reply, be tried upon their merits.

*Reversed and remanded for trial.*

RINER, C. J., and BLUME, J., concur.

## ON PETITION FOR REHEARING.

Submitted on behalf of plaintiffs and respondents by John J. Spriggs, Sr., and John J. Spriggs, Jr., of Lan-

der, Wyoming. Petition denied November 8, 1955.

HARNSBERGER, Justice.

The respondent has filed a petition for rehearing. We have carefully read and considered his points and the arguments advanced in support of the petition, but are unable to discover a single matter contained therein which was not heretofore advanced and argued by the petitioner and considered and disposed of by our opinion. This being the case, the petition for rehearing is denied.

*Denied.*

Due to the temporary absence of the Chief Justice, the above was not submitted to him. However, he had previously indicated his agreement with this disposition of the petition for rehearing.

BLUME, J., concurs.